# Wythebille

AETNA CASUALTY AND SURETY COMPANY, OF HARTFORD, CONNECTICUT V. GRACE A. LANDIS, AND OTHERS.

June 13, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*Parrish, Butcher & Parrish,* for the appellant.

*Tucker* and *Bronson* and *Satterfield & Mays,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

The Aetna Casualty and Surety Company seeks reversal of a decree fixing its liability on an executor's bond at $4,000, and the liability of a subsequent surety, the Fidelity and Deposit Company of Maryland, at $500. Both sureties admit the default of the executor and their liability. The only question involved is what proportion of the total loss each surety should pay.

C. L. Agee died, testate, in Hopewell, Virginia. In his will, he named H. F. Minter and the First National Bank of Gastonia, North Carolina, his executors. The will was probated in the Corporation Court of the city of Hopewell on August 4, 1925. The Gastonia bank declined to act and H. F. Minter qualified as sole executor, giving bond in the sum of $6,500, with the Aetna Casualty and Surety Company of Hartford, Connecticut, as surety. It appears from an order entered by the corporation court on October 10, 1929, that on motion of the Aetna Company it was relieved from further liability on the bond, and the executor on that day gave a new bond with the Fidelity and Deposit Company of Maryland as surety.

This suit was instituted in November, 1931, against the executor and the two sureties, charging the executor with mismanagement, misappropriation and embezzlement of funds belonging to the estate, praying that the *ex parte* settlement of the executor before the commissioner be surcharged and falsified, and for a proper accounting. The allegations of the bill were clearly proven and are now conceded by all parties. The sureties, jointly, compromised with the beneficiaries, paid $4,500 into court, which was distributed among the parties entitled thereto, and continued the litigation as to the liability *inter se*.

The only defalcation involved in this controversy is the misappropriation by the executor of the sum of $2,900.31, with interest. This sum was evidenced by a certificate of deposit dated October 4, 1924, payable to the testator, issued by the First National Bank of Gastonia, North Carolina.

The principal sum evidenced by this certificate was not collected until March 22, 1929, when Minter delivered it to the Hopewell Bank and Trust Company for deposit. On April 9, 1929, the Gastonia bank paid the Hopewell bank $648.87 interest on the certificate. Both of these sums were deposited to the credit of "H. F. Minter, Special Account." On June 4, 1930, the Hopewell bank paid this account $131.-38, interest on the deposit while in the Hopewell bank. It is conceded that this money was not used for the estate and that it was withdrawn from the bank by three checks; one dated May 4, 1929, for $516.58, one dated May 10, 1930, for $2,640.31, and the other dated June 4, 1930, for $523.67. The trial court held that the Aetna Company should pay the total loss evidenced by this certificate. The company concedes that it is liable for the $516.58 withdrawn by Minter on May 4, 1929, but contends that it is not liable for the balance of the fund, because it was withdrawn from the bank by Minter after October 10, 1929, the date it was relieved from further liability on the executor's bond.

Both sides concede that the determination of the question involved depends upon the time the *devastavit* occurred. The Aetna Company maintains that under the terms of the will, the executor was given discretion to select the bank in which to deposit money belonging to the estate, and that in the exercise of that discretion he selected the Hopewell Bank and Trust Company and properly earmarked this fund on deposit therein, and that no *devastavit* took place until the funds were withdrawn from this account in the Hopewell bank. Neither of these contentions is sound. The will provides:

"I desire any cash or equivalent in bank, bonds, certificates or deposits collected as early as practical and deposited in the First National Bank Gastonia, Gastonia North Carolina, at interest All personal property sold on such terms as executors may elect. All real estate sold on terms one *forth* cash balance in one two and three years, deferred payments to carry only four per cent interest, when payments thereon are made to be also placed with the

former in said bank or some similar bank should executors desire, and there held for six years from the probation of this will. Then the entire net amount equally divided between the said Grace A. Landis and Eliza. M. Tyree (the latter of Springfield, Ohio), their heirs or executors for heirs in event death, and *necesity* therefor."

The testator's purpose to have his property converted into cash and the proceeds invested by depositing the same in bank on interest is expressed in three sentences. (1) He directs his executors to collect his intangibles and deposit the proceeds, together with the cash on hand, in the First National Bank of Gastonia. These instructions are positive. (2) He orders his tangible personal property to be sold on such terms as the executors "may elect." (3) He likewise ordered his real estate to be sold, but fixed definite terms for the sale of this class of property, and provided that the deferred payments should bear only four per cent interest. The proceeds from the sale of the personal property and real estate were ordered to be deposited on interest in the Gastonia bank, "or some similar bank should executors desire." For some reason, he did not desire a division of his property between Grace A. Landis and Eliza M. Tyree until six years from the date of probate of his will.

While the will is not skillfully drawn, the testator's intentions are reasonably clear. He was disposing of his own property and had a right to make such disposition of it as he desired, so long as those desires did not contravene the public policy of the Commonwealth. It was the duty of the executor to handle the property in accordance with the wishes or intention of the testator, unless supervening circumstances rendered the directed investment hazardous. *Perry* v. *Smoot*, 23 Gratt. (64 Va.) 241. The testator in instructing his executors what investments to make, showed a decided preference for the First National Bank of Gastonia. He named this bank one of his executors, but it declined to qualify as such. The property involved in this controversy had been invested in this bank prior to his death. It was included in that part of his estate which he

instructs his executor to collect and reinvest by depositing it on interest therein. There is no suggestion in the record that the interest bearing certificate of the Gastonia bank was hazardous, it was permitted to remain therein for nearly four years after the probate of the will, and then withdrawn without any explanation or attempted justification for the change in the form of the investment.

The executor declined to testify in his own behalf. The surety on his bond at the time the change in investment was made, takes the position that under the terms of the will the executor had the arbitrary right to select any bank in which to make deposits for the estate and to transfer to such bank the money deposited in the First National Bank of Gastonia; that it was the intent of the testator to keep all the funds in one bank. If the executor had so construed the will and in the exercise of reasonable prudence and good faith had managed the property in accordance therewith, a different question would be presented.

It is clear from the record, that the executor, Minter, made no attempt to keep or invest the funds in any one bank. It shows that at different times he used three banks, the State Planters Bank and Trust Company, of Richmond, the Farmers and Merchants Bank, of Anderson, South Carolina, and the Hopewell Bank and Trust Company, and the fund here in question was permitted to remain in the First National Bank of Gastonia from the time of testator's death until March 22, 1929.

When the executor violated the instructions of the testator by changing the investment, without cause, from a deposit in the bank of Gastonia to a deposit in the Hopewell bank, he violated the terms of the instrument creating the trust. This gave the beneficiaries a right in equity, without waiting for actual loss, to compel the executor to make the investment in accordance with the instructions of the testator. See *Banister* v. *McKenzie,* 6 Munf. (20 Va.) 447.

The Aetna Casualty and Surety Company further contends that it should not be held liable for the total loss of

this fund, because at the time it was discharged from further liability a part of the fund was intact in the Hopewell bank, that the change in investment was not the proximate cause of the loss to the estate, that the actual loss was occasioned by the executor withdrawing the fund after the Fidelity and Deposit Company had assumed liability on the bond.

While it is true that the executor did not mingle the proceeds from this certificate with his personal funds in bank, he did not so earmark the deposit as to show that it was property belonging to the estate. He had full opportunity to show that he made the transfer in good faith and for the benefit of the estate, but he allowed it to remain unexplained. The evidence is conclusive that in making this transfer it was the intention of the executor to appropriate this fund to purposes foreign to the estate. Within less than two months from the time he made the first deposit, that is May 4, 1929, he withdrew for his own purposes $516.68. Under date of August 1, 1929, he signed an inventory, copy of which he furnished to the Aetna Casualty and Surety Company, in which he stated that the fund was still on deposit in the First National Bank of Gastonia. On August 5, 1929, he filed a statement before Charles T. Morris, commissioner of accounts, which purported to show all the moneys collected by him as executor, but made no allusion to this fund, a part of which he had already appropriated to his own use and the balance was then on deposit in the Hopewell bank in his own name.

In the answer to the bill, the executor admits transferring the investment from the Gastonia bank to the Hopewell bank and states, "although this respondent having frequently inquired about the collection by the said Hopewell Bank and Trust Company of this certificate of deposit, he was not advised that the said sum had been received by the Hopewell Bank and Trust Company until some time in April or May of the year 1930." Each of the above statements made by the executor concerning this fund was false.

When called upon by the beneficiaries to account for this

investment, the surety, with the aid of a suggestion in the answer of the defaulting executor and evidence *aliunde,* was able to trace the *res* from the Gastonia bank to the Hopewell bank, where it had been deposited to Minter's personal credit. There was nothing in the books kept by the executor for the estate or in the form of the account in the bank to identify the *trust res,* title to which, as shown on the deposit account, was not retained by Minter as a fiduciary, but was transferred to him personally. A part of the *trust res* was spent by Minter for his own benefit before October 10, 1929, and the residue shortly thereafter. At no time after title to the *trust res* had been transferred from Minter as executor to Minter, personally, was the fund treated by him or any other party as the property of the estate.

The conclusion is inevitable that Minter intended to defraud the estate of this fund, and that the first step to that end was the transfer of the investment from the Gastonia bank, where it was properly earmarked as the property of the estate, to the Hopewell bank, where it was not so marked, and its identity as trust property lost. All this was done while appellant was surety on the executor's bond, for which it is liable.

For the reasons stated, the decree of the trial court is affirmed.

*Affirmed.*